IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEO. M. MARTIN COMPANY, a California corporation, and THE MARTIN FAMILY TRUST – 1989,<br><br>    Plaintiffs,<br><br>  v.<br><br>ALLIANCE MACHINE SYSTEMS INTERNATIONAL, LLC, a Wyoming corporation,<br><br>    Defendant. | No. C 07-00692 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT THAT PLAINTIFF GEORGE M. MARTIN COMPANY LACKS STANDING** |

**INTRODUCTION**

In this patent-infringement action, defendant moves for summary judgment that one of two plaintiffs lacks standing. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

Plaintiff Martin Family trust is the assignee of United States Patent No. 6,655,566 B1, issued in 2003, and George M. Martin Company ("GMC") allegedly practices the claimed method as the Trust's purported exclusive licensee. Merill D. Martin and Daniel J. Talken were listed as the inventors of the '566 patent. Merill Martin and his wife are the sole beneficiaries of the Martin Family Trust. The complaint alleges that GMC is the exclusive licensee of the '566 patent (Comp ¶ 13):

> On or about October 1, 1974, Geo. M. Martin and Merill D. Martin entered into an agreement and exclusive license, which agreement was amended on July 23, 1981 and May 23, 1983 (collectively referred to as the "Exclusive License Agreement"). Under the Exclusive License Agreement,

> Merill D. Martin granted to Geo M. Martin Company an exclusive license to sue for infringement of any patents held by Merill D. Martin, solely in connection with others.

The 1974 agreement specifically identified 25 patents and patent applications as licensed to GMC. It stated (Brogan Decl. Exh. A):

> Whereas licensee is desirous to acquire the exclusive license with the right to grant sub-licenses *under any and all of the aforementioned patents and patent applications . . . .* Licensor hereby grants to licensee the exclusive right to manufacture, sell and use products under *said United States patents and patent applications* and under said Japanese patents and patent applications with the right to sub-license in the United States and in Japan (emphasis added).

The written amendments to the 1974 agreement — executed in 1978, 1981, and 1983 — licensed additional patents and patent applications owned by Merill Martin under the terms of the 1974 agreement. Neither the agreement nor the amendments, however, mentioned the '566 patent. *Nor* did they purport to license future patents or patent applications.

Nonetheless, plaintiffs contend that the '566 patent was exclusively licensed to GMC pursuant to an oral agreement between Merill Martin (as the trustee of the Martin Family trust) and GMC. The former president of GMC, Guido Cursi, allegedly witnessed the agreement, but no declaration has been provided from him. Pursuant to the alleged oral license, plaintiffs say Merill Martin agreed to exclusively license all future patents assigned to the trust to GMC. The main evidence of this oral licensing agreement is the testimony of Attorney Myron Greenburg, who has represented GMC and the trust for twenty years. But Attorney Greenburg was not present when the alleged oral-exclusive license was made (Greenburg Dep. 25–26). At his deposition Attorney Greenburg stated (*id*. at 13–15):

> Q. And what agreements are you aware of relating to the '566 patents?
>
> A. There is an oral licensing agreement between the Martin Family Trust and the George M. Martin Company of this patent.
>
> Q. Who are the parties to the oral licensing agreement relating to the '566 patent.
>
> A: The Martin Family Trust.
>
> Q. Okay.

2

> A. And the George M. Martin Company.
>
> Q. And when was that agreement entered into?
>
> A. In the early 1990s, probably around 1990.
>
> Q. And who entered into the agreement on behalf of the trust?
>
> A. Merill Martin.
>
> Q. And on behalf of George M. Martin Company?
>
> A. I would say Merill Martin and the then-president.
>
> Q. And do you remember the president's name?
>
> A. I'm trying to remember.
>
> Q. Was it Guido?
>
> A. Guido Cursi, yes.

Attorney Greenburg has held various positions at GMC over a twenty-year period, including vice president, general counsel, and board member (Greenburg Decl. ¶ 4).

In consideration for practicing the claimed invention, GMC pays the Martin Family trust a 3% royalty fee (Morgan Decl. ¶ 7). On its tax returns, the Martin Family trust treats these royalties as capital gains, which plaintiffs allege — and defendant does not contest — is only supposed to be done if the royalty income is received from an exclusive licensee (Greenburg Dep. 25). GMC also paid for the prosecution of the '566 patent and continues to pay its maintenance fees. In addition, on at least one occasion, GMC's counsel has sent a cease-and-desist letter to a third party regarding their alleged infringement of the '566 patent which stated (Lisi Decl. Exh. D):

> We represent the Geo. M. Martin Company ("Martin"), *the exclusive licensee* in the United States of U.S. Patent No 6,655,566 B1 ('the '566 patent'). In connection with that representation, it has recently come to out attention that your company is manufacturing, selling, and/or offering for sale a 'bundle breaker' corrugated paper machine under the name "Fastbreak Bundle Breaker" in violation of our client's rights in the '566 patent (emphasis added).

No objection on this motion has been made to the cease-and-desist letter by defendant. There is nothing on the record indicating that the Martin Family trust has practiced the patented

3

invention itself or licensed the '566 patent to anyone besides GMC. Attorney Greenburg also testified that GMC has the right to sublicense the '566 patent, the ability to settle any infringement claims without approval from the Martin Family trust, and that the term of the license is for the life of the patents (Greenburg Dep. 22, 23, and 34)

**ANALYSIS**

The Patent Act provides that a patentee has a remedy for patent infringement by civil action. 35 U.S.C. 281. "This has been interpreted to require that a suit for infringement must ordinarily be brought by a party holding legal title to the patent." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1091, 1093 (Fed. Cir. 1998). Yet, as held in *Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995):

> Under certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a *co-plaintiff* with the patentee. Such a licensee is usually an 'exclusive licensee.' To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. If the party has not received an *express or implied* promise of exclusivity under the patent, *i.e.*, the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that party will not be sued for infringement (emphasis added).

An exclusive license need not be in writing. A license may be "written, verbal, or implied." *Enzo APA & Son, Inc.*, 134 F.3d at 1093; *see also Weinar v. Rollform, Inc.*, 744 F.2d 797, 807 (Fed. Cir. 1984) ("The jury need not have determined that Gypsum was "an exclusive licensee," as defined by Rollform. It was at liberty to believe the testimony that an oral contract existed between Weinar and Gypsum, under which Gypsum had an exclusive right to sell as sole distributor in the United States."); *see also Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358, 1364 (Fed. Cir. 2003) ("[l]icenses may be oral").

Under California law, a contract may be written or oral. To determine whether a contract has been formed, it is necessary to assess "the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Bustamente v. Intuit, Inc.,* 141 Cal.App.4th 199, 208 (2006).

4

Under California Civil Code Section 1621, "[a]n implied contract is one, the existence and terms of which are manifested by conduct."

Here, Attorney Greenburg's testimony regarding the terms of the purported oral-exclusive license seems inadmissible because he was not present at the creation. It is also troubling that neither Merill Martin or Guido Cursi — the alleged participants in the agreement — provided sworn statements supporting plaintiffs' allegations. Nor is there any sworn testimony stating the two are unavailable or incompetent to testify.

The course of conduct of the parties is probative to show the existence of a license, but it begs the question of whether such a license was *exclusive*. The Federal Circuit has yet to directly address the precise issue. In *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 127 Fed. Appx. 493 (Fed. Cir. 2005), the Federal Circuit did not reach the merits of the creation of an oral or implied exclusive license, but it did seem to indicate that vague testimony regarding the terms of a purported license should be excluded by the district court. On this record, it is a close call whether plaintiffs have provided enough evidence to warrant a trial on the issue of whether George M. Martin Company has an exclusive license. The doubt will be resolved in favor of a trial. Most likely, the issue of the company's standing to sue will be tried first with the infringement case to follow. The exact shape of trial will be discussed at the final pretrial conference.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 30, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE