**United States District Court**

For the Northern District of California

1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8                                                    No. C 07-00692 WHA

GEO. M. MARTIN COMPANY, a California
9    corporation, and THE MARTIN FAMILY TRUST –
1989,

10                    Plaintiffs,

11    v.

12    ALLIANCE MACHINE SYSTEMS
INTERNATIONAL, LLC, a Wyoming corporation,
13

14                    Defendant.

15    _____/

16                **COURT'S PROPOSED CHARGE TO THE JURY**

17                    **[AND SPECIAL VERDICT FORM]**

18                PROVIDED TO COUNSEL ON SEPTEMBER 30, 2008.

19            Appended hereto are drafts of the substantive portions of the charge to the jury and the

20    special verdict form given to both sides on SEPTEMBER 30, 2008, for discussion at the charging

21    conference on OCTOBER 1, 2008, AT 3PM.  Counsel are reminded that all objections, additions,

22    or modifications must be made at the charging conference or else they shall be deemed waived.

23

24

25

26

27

28

1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10

GEO. M. MARTIN COMPANY, a California

11

corporation, and THE MARTIN FAMILY TRUST –
1989,                                                           No. C 07-00692 WHA

12

Plaintiffs,

13

v.

14

ALLIANCE MACHINE SYSTEMS

15

INTERNATIONAL, LLC, a Wyoming corporation,

16

Defendant.

17

_____/

18

19

20

**[DRAFT]**

21

**FINAL CHARGE TO THE JURY**

22

**AND SPECIAL VERDICT FORM**

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1.

Members of the jury, it is my duty to instruct you on the law that applies to this case.
A copy of these instructions will be available in the jury room for you to consult as necessary.

It is your duty to find the facts from all the evidence presented in the case. To those facts
you will apply the law as I give it to you. You must follow the law as I give it to you whether
you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions,
prejudices or sympathy. That means that you must decide the case solely on the evidence before
you. You will recall that you took an oath promising to do so at the beginning of the case. In
following my instructions, you must follow all of them and not single out some and ignore
others; they are all equally important. You must not read into these instructions or into anything
the Court may have said or done as suggesting what verdict you should return — that is a matter
entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

      1.      The sworn testimony of witnesses, on both direct and
cross-examination, regardless of who called the witness;

      2.      The exhibits which have been received into evidence;

      3.      The sworn testimony of witnesses in depositions read into
evidence; and

      4.      Any facts to which all the lawyers have stipulated here in the
courtroom before you. You must treat any stipulated facts as having been
conclusively proven.

3.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such
as testimony by a witness about what that witness personally saw or heard or did.
Circumstantial evidence is proof of one or more facts from which you could find another fact.
By way of example, if you wake up in the morning and see that the sidewalk is wet, you may

find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense.  You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

4.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer.  A question by itself is not evidence.  Consider it only to the extent it is adopted by the answer.

3.      Objections by lawyers are not evidence.  Lawyers have a duty to their clients to consider objecting when they believe a question is improper under the rules of evidence.  You should not be influenced by any question, objection or the Court's ruling on it.

4.      Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1        5.      Anything you may have seen or heard when the Court was not in

2   session is not evidence.  You are to decide the case solely on the evidence

3   received at the trial.

4                     5.

5        Certain charts, animations and summaries have been shown to you in order to help

6   explain the facts disclosed by the books, records and other documents which are in evidence in

7   the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect

8   the facts or figures shown by the evidence in the case, you should disregard these charts and

9   summaries and determine the facts from the underlying evidence.

10                    6.

11       In deciding the facts in this case, you may have to decide which testimony to believe and

12  which testimony not to believe.  You may believe everything a witness says or part of it or none

13  of it.  In considering the testimony of any witness, you may take into account:

14       1.      The opportunity and ability of the witness to see or hear or know

15  the things testified to;

16       2.      The witness' memory;

17       3.      The witness' manner while testifying;

18       4.      The witness' interest in the outcome of the case and any bias or

19  prejudice;

20       5.      Whether other evidence contradicted the witness' testimony;

21       6.      The reasonableness of the witness' testimony in light of all the

22  evidence; and

23       7.      Any other factors that bear on believability.

24       The weight of the evidence as to a fact does not necessarily depend on the number of

25  witnesses who testify.  Nor does it depend on which side called the witnesses or produced

26  evidence.  You should base your decision on all of the evidence, regardless of which party

27  presented it.

28

**United States District Court**
For the Northern District of California

7.

You are not required to decide any issue according to the testimony of a number of witnesses, which does not convince you, as against the testimony of a smaller number of witnesses or other evidence, which is more convincing to you. The testimony of one witness worthy of belief is sufficient to prove any fact. This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side. It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides. The test is not the number of witnesses but the convincing force of the evidence.

8.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or to do something, that is inconsistent with the witness' present testimony. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

9.

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited. Inability to recall is common. Innocent misrecollection is not uncommon. Two persons witnessing an incident or a transaction sometimes will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others. You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

10.

In determining what inferences to draw from the evidence you may consider, among other things, a party's failure to explain or deny such evidence.

**United States District Court**
For the Northern District of California

11.

You have heard testimony from witnesses referred to as "expert witnesses."  These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.  Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion and all the other evidence in the case.  If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances.  In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

12.

In these instructions, I will often refer to a party's burden of proof.  I will be discussing two different burdens of proof.  The first is known as a burden of proof by a preponderance of the evidence.  When a party has the burden of proof on any issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the issue is more probably true than not true.  To put it differently, if you were to put the evidence favoring plaintiff and the evidence favoring defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side.  If the party fails to meet this burden, then the party with the burden of proof loses on that issue.  Preponderance of the evidence basically means "more likely than not."

The second burden of proof involved in this case is known as a burden of proof by clear and convincing evidence.  When a party has the burden of proving any issue by clear and convincing evidence, it means you must be persuaded by the evidence that the contention is highly probable.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

13.

If you find that plaintiff carried its burden of proof as to an issue your verdict should be for plaintiff on that specific issue.  If you find that plaintiff did not carry its burden of proof, you

must find against plaintiff on that issue.  This same principle also applies to defendant on issues on which they have the burden of proof.

14.

I now will turn to the law that applies to this case.  As you know, in this lawsuit George Martin Company seeks money damages from defendant Alliance Machine Systems International for allegedly infringing Claims 1, 2, 3, 4, 7, 13, and 14 of the '566 patent.  I will refer to Claims 1, 2, 3, 4, 7, 13, and 14 as the "asserted claims" or "claims in suit" or the "claimed inventions." The product that George Martin contends infringes the asserted claims is Alliance's "Bundle Breaker III" (BB III).  I will refer to this product as the "accused product."  Alliance denies infringement and contends that the claims in suit are invalid.

Your job is to decide the issues of infringement and validity.  If you decide that any claim has been infringed and is valid, you will then need to decide whether the infringement was willful and decide on any money damages.

15.

As you know, the patent claims are the numbered paragraphs at the end of each patent. The claims are important because they specifically define the exclusive rights granted by the patent office.  The figures and the specification in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims but the claims define how broad or narrow the patent holder's rights.  It is often the case that a patent specification and its figures disclose more than the specific matter claimed as inventions, so it is important to keep straight what the specification says versus what the claims say.

16.

I am now going to instruct you on the meaning of some of the words and phrases in the patent claims at issue.  You must accept and use these meanings in your deliberations.

*Compliance structure*:  The term "compliance structure" appears in all asserted claims. The term means a structure that deforms to allow a more uniform distribution of force.

**United States District Court**
For the Northern District of California

*Fluid pressurized structure*:  The term "fluid pressurized structure" appears in all asserted claims.  This term means a structure, capable of being sealed, containing a liquid or a gas at greater than atmospheric pressure that applies force to the inside of the structure.

*A gap therebetween*:  The term "a gap therebetween" appears in all asserted claims.  This term means the space between the point where the log loses contact with the upstream conveyor and the point where the log acquires contact with the downstream conveyor.

*Conjoint*:  The term "conjoint" appears in all asserted claims.  This term means combined.

You must accept these definitions as established for purposes of your deliberations and verdict.  You may, however, consider all of the evidence in the case as to whether or not these definitions have been satisfied except that if a witness based his view on meanings of the terms contrary to my stated definition, you should discount that part of his testimony accordingly.

Now, who is a person of ordinary skill in the art?  It is up to you to decide the level of ordinary skill in the field. You should consider all the evidence introduced at trial in making this decision, including:

1.      the levels of education and experience of persons working in the field;

2.      the types of problems encountered in the field; and

3.      the sophistication of the technology.

Sometimes I will refer to such a person as a "skilled artisan."

17.

George Martin has the burden of proof on the issue of infringement.  George Martin must persuade you that it is more likely than not that Alliance has infringed Claims 1, 2, 3, 4, 7, 13, and 14.

For George Martin to carry its burden of proof on infringement, it must show that each and every element of an asserted claim was literally found or equivalently found in the accused device.  Literally found means the element as actually recited in the claim is fully found in the accused product.  Equivalently found means even though the element is not literally present, its

9

equivalent is present. An equivalent is a feature that a person of skill in the art would think, as of the time of alleged infringement, was an insubstantial difference from the claimed element in the context of the claimed invention.

One way to decide whether a difference was insubstantial is to consider whether, as of the time of the alleged infringement, the feature performed substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the patent claim.

In deciding whether any difference between a claim requirement and the product was insubstantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. Known interchangeability between the claim requirement and feature in question is not necessary to find equivalency. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement was insubstantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Making a device capable of infringing use constitutes direct infringement even though it may be capable of noninfringing use. In other words, the fact that a device may be used in a manner so as not to infringe the '566 patent is not a defense to infringement if the device is also reasonably capable of a use that does infringe the patent. A device, however, does not infringe merely because it can be modified by customers or third parties to fall within the bounds of the claim unless such modification is specifically designed into the machine. The device must have been designed with the capability to infringe.

In this case, Claim 1 is drawn without regard to the number of logs. Claim 2, however, is drawn to cover a machine wide enough to process "a plurality of logs in side by side relation." A plurality means two or more. There is no claim limited to three or more logs.

Claim 1 also called out a gap between the conveyor belts defining a bundle breaking plane. If you decide that the accused device has a bundle breaking plane that is not defined by

**United States District Court**
For the Northern District of California

the gap between its conveyor belts that is not literally found in Claim 1, then you must consider whether or not it constitutes an equivalent, using the rules stated above.

18.

To assist you on the infringement issue, counsel gave you a handout that identified the elements concededly found in the accused device and highlighted in blue for you the elements disputed.  George Martin contends that the accused device satisfies all the limitations of the asserted claims.

19.

In this case, George Martin argues that Alliance willfully infringed the '566 patent. To prove willful infringement, George Martin must first persuade you that Alliance infringed a valid claim of George Martin's patent, using the rules described above.

To prove willful infringement, George Martin must persuade you by clear and convincing evidence that prior to the filing date of the complaint, Alliance acted with reckless disregard of the claims of George Martin's patent.  To demonstrate such "reckless disregard," Alliance must satisfy a two-part test.  The first part is objective.  George Martin must persuade you that Alliance acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of Alliance is not relevant to the first part.  Rather, the appropriate inquiry is whether the defenses put forth by the Alliance fail to raise any substantial question with regard to infringement or validity.  If you conclude that Alliance does raise a substantial question with regard to infringement or validity, then there can be no willful infringement.

If, however, Alliance does not raise a substantial question with regard to infringement or validity, then you need to consider the second part of the test.  The second part of the test does depend on the state of mind of Alliance.  George Martin must persuade you that Alliance actually knew, or it was so obvious that Alliance should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Alliance acted with reckless disregard for George Martin's patent, you should consider all of the facts surrounding the alleged infringement including, but not

limited to, the following:  (1) whether Alliance acted in a manner consistent with the standards of commerce for its industry; (2) whether Alliance  intentionally copied a product of George Martin's covered by the patent; and (3) whether Alliance reasonably relied on a legal opinion that advised Alliance that the BB-III did not infringe George Martin's patent or that the patent was invalid.

As I just mentioned, one factor for you to consider in determining whether Alliance willfully infringed Martin's '566 patent is whether Alliance relied on a well-supported and reasonable legal opinion from counsel.  Obtaining and following legal advice before beginning or continuing an activity that may infringe another's patent does not necessarily mean that a party has not acted willfully or with reckless disregard for a competitor's patent.  A jury is entitled to reject a party's argument that its infringement was not willful even where the party obtained and relied on an opinion of counsel if it determines that the opinion was not well-supported and reasonable.

If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take your findings on willfulness or not into account in later proceedings.

20.

Now, let's turn to the affirmative defenses raised by defendant.  We will first address the invalidity defenses.  A patent issued by the Patent Office is presumed to be valid.  The burden is on Alliance to prove to the contrary.  Alliance must do so by clear and convincing evidence.  When a party has the burden of proving any issue by clear and convincing evidence, it means you must be persuaded by the evidence that the issue is highly probable.

21.

The first invalidity defense is anticipation.  Alliance contends that all asserted claims were anticipated by both the Visy and Tecasa devices.

Patents are supposed to be limited to new revelations, among other requirements. A patent claim is invalid if the claimed invention was not new at the time of the patent application.  For a claim to be invalid because it is not new, all of its elements must have

12

already existed in a single device that was known or used in the United States before the claimed invention. In patent law, previous devices or machines are included as part of the "prior art." All of the "claimed" elements must be contained within a single prior-art device. To anticipate, a prior art machine must include all of the elements of the claim. In evaluating this, you must remember that sometimes there is more than one way to implement a claimed element. To anticipate a claim, it is not necessary that a prior-art device implement an element in the same way as the patentee's machine so long as it does implement the claimed elements. For example, the claims in suit do not require that the air bag or other inflatable device run side-by-side rather than front-to-back, although the claims do require that the upper structure flex from side-to-side as needed to apply more equal pressure to at least two logs of uneven height.

For anticipation, the prior-art device must have been sufficient to enable one skilled in the art to practice the invention and it must have worked for its intended purpose. An invention is said to work for its intended purpose when there is a demonstration of its workability and utility. It is not necessary that a device be in a commercially satisfactory stage of development in order to demonstrate workability and utility. It is also not required that a prior-art device operated without any flaws as long as it shown that it operated in a substantial form that validates its practical efficacy and utility.

You will recall that I said that the prior-art device must have been known or used in the United States. Yet much of the evidence you have heard invoked the Visy devices in Australia. It is agreed by all in this case that the Visy device was known or used in the United States prior to the invention date asserted by plaintiffs. The Australia evidence is offered for you to evaluate in determining whether the Visy device met the standard described above.

In deciding whether Alliance has carried its burden of proof as to its invalidity defense, you may consider whether or not any claimed prior-art device was before the examiner, but you are not bound by the action of the Patent Office and must make your own decision as to validity. In making such a consideration, you may consider the extent, if at all, the prior-art device was explained or brought to the attention of the examiner.

22.

United States District Court
For the Northern District of California

To assist you, counsel gave you a handout that identified the elements concededly found in the prior art and highlighted in yellow and green for you the elements disputed.

23.

You have heard that there is an issue whether George Martin is entitled to a date of invention earlier than the '566 patent-application date of August 28, 2002.  With respect to all prior art references other than the Tecasa product, however, there is no need to evaluate the date-of-invention issue because the date of those prior art references preceded even the earlier date of invention argued by George Martin.

24.

Now, we turn to the issue of obviousness.  Even when a claimed invention *is* new and is not anticipated in the prior art, it may still be found unpatentable and invalid by reason of obviousness.  This is the next ground for invalidity asserted by Alliance.  Let me now explain the ground rules for obviousness.

25.

No one is entitled to obtain a patent on a claimed invention that would have been obvious to those of ordinary skill in the field at the time of the invention.  Put differently, if a skilled artisan, knowing all the prior art, would have known that all of the claimed elements already existed in the prior art, that those elements could have been arranged in the manner of the claimed invention, and would have seen the benefit of doing so, then the claimed invention should not receive a patent.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference, the claimed invention was obvious if a person of ordinary skill in the relevant field who knew about all the prior art would have come up with the claimed invention by combining the prior art references, or by combining a single prior art reference with the knowledge of one of ordinary skill in the art.

26.

However, a patent claim combining several elements, all of which were already known in the prior art, is not necessarily invalid.  To the contrary, many valid patent claims are new

14

United States District Court

For the Northern District of California

1  combinations of features already known.  To be obvious, the particular combination and

2  arrangement must have been obvious to those skilled in the art at the time of the invention.

3  You must be careful not to use hindsight; many valid inventions might seem obvious

4  after the fact.  You should put yourself in the position of a person of ordinary skill in the field at

5  the time the claimed invention was made and you should not consider what is known today or

6  what is learned from the teaching of the patent.

7  27.

8  In evaluating the obviousness issue, you should consider whether the trial evidence has

9  identified a persuasive reason that would have prompted a person of ordinary skill in the field to

10  combine the elements or concepts from the prior art in the same way as in the claimed

11  invention.  For example, market forces or other design or manufacturing incentives might have

12  naturally led to new combinations of prior art elements.  Such circumstances may indicate

13  obviousness.  You should also consider whether there was some teaching or suggestion in the

14  prior art to combine the elements claimed in the patent.  If, however, the teachings of the prior

15  art directed a person skilled in the art away from combining certain known elements, the

16  discovery of a successful way to combine those elements was more likely to be nonobvious.

17  Also, you should consider whether the claimed invention applied a known technique that had

18  already been used to improve a similar device in a similar way.  You should also consider

19  whether the claimed invention would have been obvious to try, meaning that the claimed

20  innovation was one of a relatively small number of possible approaches to a problem with a

21  reasonable expectation of success by those skilled in the art.  You should also consider whether

22  there was a design need or market pressure to solve a problem with a finite number of

23  identified, predictable solutions, such that persons of ordinary skill in the art would have had

24  good reason to pursue the known possible solutions within his or her technical grasp.  Such

25  circumstances would be indicative, not of innovation, but of straightforward application of

26  ordinary skill and common sense, meaning that it was obvious.

27  The ultimate conclusion of whether a claim is obvious should be based upon your

28  determination of several points.  *First*, you must decide the level of ordinary skill in the field

15

United States District Court

For the Northern District of California

that someone would have had at the time the claimed invention was made. *Second*, you must decide the scope and content of the prior art. *Third*, you must decide what difference, if any, existed between the claimed invention and the prior art. The ultimate question is whether the differences between the prior art and the claimed invention were so insubstantial that the claimed invention would have been obvious to those of ordinary skill in the art. In this you must presume that those of ordinary skill in the art would have known and understood all of the relevant prior art, including all relevant patents and articles.

28.

In addition, you should consider any of the following factors that you find have been shown by the evidence. These are sometimes called "secondary considerations:"

1.    commercial success of a product due to the merits of the claimed invention;

2.    a long-felt need for the solution provided by the claimed invention;

3.    unsuccessful attempts by others to find the solution provided by the claimed invention;

4.    copying of the claimed invention by others;

5.    unexpected and superior results from the claimed invention;

6.    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7.    other evidence tending to show non-obviousness;

8.    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

9.    other evidence tending to show obviousness.

The presence of factors 1–7 may be considered by you as an indication that the claimed invention *would not have* been obvious at the time the claimed invention was made. The presence of factors 8–9 may be considered by you as an indication that the claimed invention *would have* been obvious at such time. Although you should consider any evidence of these

16

**United States District Court**
For the Northern District of California

factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

29.

When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention.  If a patentee makes the requisite showing of nexus between commercial success and the patented invention, the burden shifts to the challenger to prove that the commercial success is instead due to other factors extraneous to the patented invention, such as advertising or superior workmanship.

You must consider all the evidence that was presented to you by both sides in your consideration of all the secondary considerations.  Although you must consider such evidence, the importance of any of them to your decision on the issue of obviousness is up to you.

30.

For purposes of identifying the relevant body of prior art, you must look only to art prior to the date of invention.  Now, what is a date of invention under the law?  The presumed date of invention is the date of the patent application, namely in our case: August 28, 2002.  The parties have stipulated, however, that the Tecasa product was first known in the United States in June 2002 (a couple of months before the application date for the '566 patent), and that the Tecasa product is covered by the asserted claims.  George Martin contends that the inventors made the claimed inventions before the date the Tecasa product was sold.  If George Martin is correct that the inventors made the claimed inventions in the United States before June 2002, then the Tecasa product is not prior art.

The date of invention is either the presumed date of invention or, if earlier, the date by which the invention was reduced to practice.  To show actual reduction to practice, the inventor must have constructed an embodiment or performed a process that met all the limitations of the claimed invention and that worked for its intended purpose.  Depending on the character of the invention and the problem it solves, this showing may require test results.  Less complicated inventions and problems do not demand stringent testing.  In fact, some inventions are so simple

United States District Court

For the Northern District of California

1   and their purpose and efficacy so obvious that their complete construction is sufficient to

2   demonstrate workability.

3        Where a party seeks to show an actual reduction to practice through the oral testimony of

4   an inventor, the testimony must be "corroborated."  In assessing the corroboration requirement,

5   you must apply a rule of reason analysis.  Under a rule of reason analysis, an evaluation of all

6   pertinent evidence must be made.  Although the testimony of a co-inventor cannot be used to

7   corroborate the testimony of another, evidence related to the entire inventive process may be

8   considered by you in determining whether the named inventors reduced the invention to practice.

9   No corroboration requirement need be shown where a party seeks to prove reduction to practice

10  through the use of physical exhibits.  In this regard, you must determine, with the aid of

11  testimony of those skilled in the art, what any such documents show.

12       In this instance, George Martin must offer evidence showing that the named inventors

13  invented the subject matter of their patent before the Tecasa product was sold.  If George Martin

14  did so in your judgment, Alliance must prove by clear and convincing evidence that the named

15  inventors did not invent the claimed invention prior to the date the Tecasa product was sold, that

16  is, that the named inventors did not reduce the claimed invention to practice before the Tecasa

17  product was sold.

18       With all of the evidence from both sides before you, Alliance has the burden to persuade

19  you by clear and convincing evidence that as of the date of invention as determined by you from

20  all the evidence in the case, the claimed inventions were anticipated or obvious in light of the

21  prior art.  If you determine that the Tecasa product was not sold before the date of invention of

22  the '566 patent then you may not consider it as prior art for anticipation purposes and may only

23  consider it with respect to obviousness as a secondary consideration (#8 discussed above).

24                                      31.

25       The next defense contends that the patent application was filed too late.  A patent claim

26  may also be invalid if the patent application was not filed within the time required by law.

27  This is called a "statutory bar."

28

**United States District Court**
For the Northern District of California

A patent claim is invalid if the invention defined in that claim was offered for sale by anyone in the United States more than one year before the filing date of George Martin's patent application. In this case, the parties have stipulated that the Visy machine was offered for sale in the United States in 1996 (well before one year the '566 application was filed). You must determine whether the Visy machine embodied the claimed invention and whether it was ready for patenting. The claimed invention is "ready for patenting" if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the filed to make and use the invention based on them.

32.

I will now instruct you on the issue of damages. By instructing you on damages, I am not suggesting which party should win on any issue. I am instructing you on damages only so that you will have guidance on how to consider the evidence on damages if you reach this issue. If you find that Alliance has infringed any of the asserted claims, and that those infringed claims are valid, you must then determine the amount of money damages to be awarded from Alliance to George Martin to compensate it for the infringement.

33.

Under the law, a patent holder is entitled to receive damages starting from the date of first infringement. For the products at issue here, you must determine the appropriate date for commencement of damages. That date will be the date you determine infringement began. The damage period ends on October 25, 2007.

34.

Under the law, the amount of damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

35.

**United States District Court**
For the Northern District of California

1    In this case, George Martin seeks to recover lost profits for Alliance's sales of its BB III.

2    To recover lost profits for infringing sales, George Martin Company must show that but

3  for the infringement there is a reasonable probability that it would have made sales that Alliance

4  made of the infringing product.  George Martin must show the share of Alliance's sales that it

5  would have made if the infringing product had not been on the market.

6    You must allocate the lost profits based upon the customer demand for the patented

7  feature of the infringing product.  That is, you must determine which profits derive from the

8  patented invention that Alliance sells, and not from other features of the infringing product.

9                                              36.

10   George Martin is entitled to lost profits if it proves all of the following:

11        (1)    that there was a demand for the patented feature.

12        (2)    that there were no non-infringing substitutes, or, if there were, the number

13               of the sales made by Alliance that George Martin would have made

14               despite the availability of other acceptable non-infringing substitutes.  An

15               alternative may be considered available as a potential substitute even it

16               was not actually on sale during the infringement period.  Factors

17               suggesting that the alternative was not available include whether the

18               material was of such high cost as to render the alternative unavailable and

19               whether Alliance had to design or invent around the patented technology

20               to develop an alleged substitute.

21        (3)    that George Martin had the manufacturing and marketing capacity to make

22               any infringing sales actually made by the infringer and for which George

23               Martin seeks an award of lost profits; and

24        (4)    the amount of profit that Martin would have made if Alliance had not

25               infringed.

26                                              37.

27

28

United States District Court
For the Northern District of California

In this case, George Martin is also seeking lost profits from sales of other machines and spare parts used in the same production line as its bundle breakers, which it contends it would have sold along with its bundle breaker. These products are called collateral products.

To recover lost profits on sales of such collateral products, George Martin must prove two things in addition to the requirements I have already detailed above. First, that it is more likely than not that George Martin would have sold the collateral products but for the infringement. Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit. A functional relationship does not exist when independently operating patented and unpatented products are purchased as a package solely because of customer demand or customer preference. That is, the fact that customers prefer that particular patented and unpatented products come from a single supplier does not necessarily mean that the patented and unpatented products are "analogous to components of a single assembly or parts of a complete machine."

38.

As the party seeking damages, George Martin has the burden of proving the amount of damages by a preponderance of the evidence. While George Martin is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty. If George Martin has met its burden, your damages award should put George Martin in approximately the financial position it would have been in had the infringement not occurred.

39.

You may only award George Martin damages that are adequate to compensate for infringement. You may not award any more or less damages. Although George Martin may recover future damages (after the cut-off date in October 2007) that it can prove with reasonable certainty, George Martin is not entitled to speculative damages, which means compensation for future loss or harm which, although possible, is conjectural or not reasonably certain. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Nor may you include any amount for the purpose of punishing Alliance or setting an example.

40.

When you begin your deliberations, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict as to each claim and as to damages, if any, must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

41.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.  When you go into the jury room, the Clerk will bring in to you the trial exhibits received into evidence to be available for your deliberations. The Clerk will also provide you with an index to them.

42.

As I noted before the trial began, when you retire to the jury room to deliberate, you will have with you the following things:

1.      All of the exhibits received into evidence;

2.      An index of the exhibits;

3.      A work copy of these jury instructions for each of you;

4.      A work copy of the verdict form for each of you; and

5.      An official verdict form.

22

United States District Court

For the Northern District of California

You do not have to discuss the questions in the strict sequence indicated in the special verdict form, but you must, by the end, answer them unanimously as indicated in the form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels containing your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

43.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

44.

You have been required to be here each day from 7:45 a.m. to 1:00 p.m. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason. For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine. The Court does, however, recommend that you continue to start your deliberations by 8:00 a.m. If you do not reach a verdict by the end of today, then you will resume your deliberations on Wednesday and thereafter.

It is very important that you let the Clerk know in advance what hours you will be deliberating so that the lawyers may be present in the courthouse at all times the jury is deliberating.

45.

You may only deliberate when all of you are together. This means, for instance, that in the mornings before everyone has arrived, or when someone steps out of the jury room to go to the restroom, you may not discuss the case. As well, the admonition that you are not to speak to anyone outside the jury room about this case still applies during your deliberation.

46.

After you have reached a unanimous agreement on a verdict, your foreperson will fill in, date and sign the verdict form and advise the Court that you have reached a verdict. The foreperson should hold on to the filled-in verdict form and bring it into the courtroom when the jury returns the verdict. Thank you for your careful attention. The case is now in your hands. You may now retire to the jury room and begin your deliberations.

Dated:

                                          WILLIAM ALSUP
                                          UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

24